May it please the court, good morning, your honors. My name is Pedro de Oliveira, and with my colleague, Mark Freeman, we represent the appellant M.W. and her son, T.W. I'd like to begin by requesting five minutes for rebuttal. All right, granted. Thank you. The district court contradicted Supreme Court precedent, misapplied KPAN Lopen, and most over 1,600 pages of transcripts. The district court violated the standard of review, which requires due weight and deference when it substituted its own factual conclusions for that of the ALJ. Can I ask you, what did the ALJ find with respect to whether they had provided T.W. with FAPE? And I'd like you to refer specifically to somewhere in this 63 or 64-page opinion of the ALJ. I'm having a hard time finding the finding and finding the basis for the finding, so if you could point me in that direction. Yes. Obviously, the issue here is preschool versus kindergarten with support. Yes. So, the findings begin at appendix A55, and looking at the bottom of page A57, it's consistent with Dr. Baumgartel's expert testimony. I find the following facts. The kindergarten is more academic than it was years ago, and it goes on and continues, and so there. And says that it's consistent with Dr. Baumgartel's expert opinion for the 07-08 school year placement in kindergarten pursuant to an IEP with supports and services was necessary. So, kindergarten with supports and services was necessary to have FAPE. Yes. So, this is a glaring typo in the decision, and that everything else throughout the entire ALJ opinion, the content is clear that that is a typo. It was not contested at the district court. Police have not contested it in their brief. It's clear from everything, including at page A63, at the conclusion of the ALJ's opinion, where he says, consistent with the findings of fact, placement in kindergarten would not have provided a FAPE. So, what's the typo? What should it have read? That last sentence should have said, placement in preschool, project child preschool. Preschool was necessary. Yes. So, the typo is kindergarten pursuant to an IEP with supports and services? Correct. Wow. Correct. And the context of the entire opinion makes that clear. I thought he had said more than that. I thought he also referenced maybe Baumgartner's report, that's what you're referring to. Yes. Which said that placement in the kindergarten program would, I hate to use the word, but retard his progress emotionally. Yes, Your Honor. And his ability to interact with other students. And that would set him back from advancing academically. Yes, Your Honor. I mean, did he make that kind of finding? Yes. And that is in this paragraph that's specifically being addressed. Where is that? I'm sorry. I'm behind it. Where it says, at the beginning of A58, where it says, he needed a lot of support and scaffolding to develop the ability to listen to others and interact with peers and teachers. Okay. He was cognitively fine, but socially and emotionally very immature and delayed. Now, Baumgartner never saw the IEP. That's correct, Your Honor. So, what do we make of his, I mean, there are all these experts every which way. And he chooses to rely upon an expert who never even looked at the IEP. Well, Dr. Baumgartner is a very experienced developmental pediatrician at the Children's Hospital of Philadelphia. She has been TW's pediatrician since he was two years old. And she, the majority of the children that she sees are children on the autism spectrum. So, she has a lot of experience with this. And specifically, at page, in the transcripts, at page A1565, she, and in other places in her testimony, as well as in her letters, she explains that the idea that a child on the autism spectrum, particularly with such a late September birthday, not turning five until the end of September, the idea that a kindergarten, that they could be successful in kindergarten, she could very easily see that that absolutely would not work. So, it's a blanket rule. All children that fit that diagnosis are ineligible for kindergarten? I don't know that, for Dr. Baumgartner, in her expert opinion, yes. Obviously, other experts. We don't even really need, then, to go through the interactive process of consulting the whatever other accommodations the district is going to make, because, in her view, if that child is going to enter kindergarten, it's ipso facto inappropriate. For, in Dr. Baumgartner's opinion, for this child, TW, and for all she had seen since the age of two up until now, you know, almost him turning five, that's how Dr. Baumgartner felt now. But not just this child. You just said a minute ago that anybody on the autism spectrum with a late September birthday, kindergarten's not going to be appropriate. I apologize, Your Honor. I misquoted this, Dr. Baumgartner. She did not say as specific as that. Those are reasons why. But she was making this decision. For what she knew of her patient, TW, kindergarten would not be appropriate. Other experts may look at it differently. What if the kindergarten IEP involves all sorts of socialization enrichment? How do we know that that would not be a free and appropriate public education? Well, in Dr. Baumgartner's view, from everything that MW had told her about it, without having read the actual document, but from everything that MW explained, and again, knowing her patient, TW, it would be a moot endeavor to try, in Dr. Baumgartner's opinion. He doesn't really say that. He says he needed a lot of support and scaffolding to develop the ability to listen to others and interact with peers and teachers, but didn't even look at the IEP to see the support and scaffolding that was provided, which they adopted everything that Yale said should be adopted. Let me go back a minute. Your initial argument before we started questioning about the merits was that the district court got it wrong in applying Cape Henlopen. I think there's something to be said for the fact that the district court never did address the issue of whether the ALJ correctly decided that FAPE was not provided. Is that not correct? The district court, based on a legal error, decided that the ALJ could not have FAPE was provided by misapplying Cape Henlopen. In Cape Henlopen, the parents refused to allow the school to examine their child, and therefore the parents prevented the school from being able to develop an IEP. That's not the case here. There wasn't an IEP. Here we have an IEP, a revised IEP, and an impasse. Yes, that's right. So it's definitely different from Cape Henlopen. Absolutely. So I get back to my question. Is the remedy that you're seeking before us that we send it back to the district court to say you got it wrong, Cape Henlopen doesn't apply, you need to decide whether the ALJ was right or wrong in saying that what was set forth in the IEP denied FAPE? The relief we're requesting is the relief that was granted in DSV Bayonne in this court's precedent where the district court was reversed, the ALJ's opinion was reinstated, and the remand was for the determination of attorneys whose costs and interests. Why would we decide FAPE? Why would we decide the issue that the district court didn't decide? Shouldn't we have the district court in the first instance decide whether the ALJ was correct or not? Well, in the Bayonne case, which is similar that the administrative law judge decided that FAPE was not provided, the district court ruled against that. On a procedural basis? There, on disagreeing whether FAPE was in fact provided. See, that's it. See, there the district court decided the merits and said, you know, I disagree, there is no FAPE. I mean, the FAPE was provided. And then we would address that, whether that was correct or not. But here we don't have the district court speaking at all as to that issue. Well, Your Honor, I would also say that here the district court had multiple grounds for overturning the ALJ, none of them valid. And given that the district court has already tried various approaches, I think that that shows the district court has already thought about what would be the issues with the ALJ's opinion. And because none of those are valid, which is before the court right now, there's no reason to believe that on a remand the district court would now find a valid reason when they've already tried at least three. But the only holding here is based on Kay Penlopin. I think there's three holdings. There's a Kay Penlopin-based holding saying that you can't make a FAPE determination. There's also a determination which contradicts the Supreme Court's precedent in Florence County saying that an alternative grounds is that when the parents made an IEP with Project Child as a unilateral placement, that because they didn't invite the school district to that, that that would make it unable to determine. That's just clearly wrong with Supreme Court precedent. And third, the district court—if I may just finish the question. Yeah, just finish the thought. Thank you. And third, the determination that alternative findings, that the parents delayed meetings and that they didn't give notice, and those factual findings by the district court which contradict the administrative law judge's ultimate factual conclusion. All right, you reserve five minutes of rebuttal. We'll hear from you then. Thank you, Your Honor. Good morning. May it please the Court. Sherry Adams, Adams, Stern, Gutierrez, and Latim-Bader on behalf of the Upper Freehill Regional Board of Ed. I'd like to address the question that was raised by the Court in terms of Dr. Bamga-Gartel's report. I think contrary to what the appellant is arguing, that is what the ALJ relied on, that one August report. Yet, in his opinion, he found all of the other witnesses, the district's witnesses, all of the experts who are educators, who are behaviorists, who went to the program, who observed the program, and all of those individuals who supported the movement from preschool to kindergarten. Basically, the district court did not have to overturn any findings because the— keep the child in the child project program or the child should advance to kindergarten. I mean, for me, looking at the record, this is a pretty close case. Yes, I— And it's probably a very difficult case for the ALJ because of the competing experts who were testifying. I think that's accurate. I think, and what we tried to make clear in the brief, is at the time of the IEP, and this feeds into actually the district court's position in terms of the equitable considerations in the notice, at the time that the IEP, initial IEP was proposed in June 15th, Dr. Bartel had basically said that he needed to move to a project find program with older, age-appropriate children. That, to me, is not the equivalent of staying in preschool, nor does that warrant a finding to that effect. So we're really dealing with something after the fact. When the June 15th meeting occurred and Dr. Breslin's report wasn't ready, they adjourned the meeting. At that time, they asked the parents, do you accept or reject? They did not say so. Either way, they couldn't. The meeting was rescheduled. They wanted more time to produce the final report. Right, and the report was— And then you rescheduled for the 29th. Right, and apparently— And you meet with them informally on the 28th. Correct. And then, apparently, the report was not yet done, so the meeting was canceled. And the report was provided. The district sent a letter suggesting they contact the district again to try to work towards an agreement. There was no further contact thereafter. And it did say you've got 15 days, right? Yes, it did say that, yes, because they have to offer something with a 15-day notice. That's a requirement that you offer the 15 days. It is. If the administrative law judge's decision that an individual educational plan provides or does not provide an appropriate education is a matter of fact, we would have to say the ALJ was clearly erroneous in his conclusion, would we not? I mean, would not the district court have to come to that conclusion in order to vacate or reverse the ALJ? I think, yes. In follow-up to, if you say that the district court did not make a finding, and I would agree they did not make a finding on the fate of it— I think that was one of the points Judge Rendell was making, that the district court did not do that. Correct. And I think that— Should it not do that? It should do that if that is— I think what the district court went beyond that, that regardless of whether that IEP provided FAPE or not, that equitable considerations under the regulatory provisions having to do with unilateral placements and reimbursements were violated. There was no notice. There wasn't a rejection of the IEP. There was basically any further discussion in terms of the IEP process was thwarted because— Well, it wasn't really. I mean, this is what happens all the time. This is why there's litigation in our court, because they reach an impasse and there's a disagreement. That's—you know, you can't hold that against someone. That's what happens. That's not, you know, thwarting. There was a lot of things that went on here and there was a lack of agreement, so they filed in district court. That happens all the time. And we can't say the parents are thwarting when they disagree and they want a district court to decide. I would have no problem with that if, in fact, what happened at the IEP meeting or when the IEP was proposed was basically I disagree and I'm filing and I'm going to give you a notice of my unilateral placement. I'm going to go proceed and place my child in September. That's not what happened. What happened was, no, we are not accepting this as your final proposed IEP. We want to sit down and discuss this. We want your response to reports. So there was an effort on the part of the parents' side to try to continue discussions with the district. So it wasn't where they just turned and said... I thought the district was... I thought it was the other way around. I thought, I mean, on the 29th, the district sends a letter saying, here's the IEP. Right, because they have to have a proposed IEP. And I thought that the district expected there to be further discussions, but instead on July 3rd, you get a letter saying, we're going our own way. Well, basically... That's not what happened. Well, the one letter that they received had only to do with the extended school year, the summer program. So the actual notice of the unilateral placement at Project Child was not until September, right before school started. But this included Breslin's report recommending that TW be placed in an integrated or regular preschool kindergarten program. And the July 3rd letter from the parents said, we look forward to your response. Correct. And that's when the district sent a letter on July 11th, trying to basically arrange for further contact to meet again, to have a discussion about that report and any other concerns. And then there were no further meetings. No, there weren't. So then this is just like Cape Henlopen. Well, it does have similarities in terms of the meeting section. Yes, it does. But why... The ALJ didn't have the benefit... My concern here is the ALJ did not have the benefit of our decision in Cape Henlopen. Correct? Right. So why shouldn't the district court have sent it back to the ALJ so you could make a full record? Because it seems to me the action in this case, the grounds for decision, focuses largely on whether or not the parents went their own way prematurely, rather than letting the process in trying to establish an appropriate IEP run its course. Well, I think... Isn't that the import of Cape Henlopen? The two parties need to play this thing out all the way to the end. And you can't just say, well, I don't like what you just said, so I'm gonna go put my kid in a private school at $25,000 a year. I do think that that is a factor in terms of the Cape Henlopen case. But in this particular circumstance, a unilateral placement was made, and the issue before the district court was whether or not the parents were entitled to reimbursement for that. So the fact that the equitable considerations, the lack of notice, warranted a denial of that reimbursement for the unilateral placement, regardless of whether the ALJ found that the district had offered... But was the record made in front of the ALJ on those issues? It seemed like most of the record in front of the ALJ was this classic battle of the experts, where the evidence is, as Judge Fuentes indicated, is all over the map, where, you know, when we see evidence that goes all over the map, we defer to the fact finder. That's what we do. I think... But I'm concerned here that if your primary argument is that we should affirm what the district court did because of this sort of procedural Cape Henlopen issue, were the facts and circumstances related to that issue adequately litigated in front of the ALJ, recognizing that nobody knew Cape Henlopen would be decided thereafter? I think the factual findings were made. I don't think the district court varied the ALJ's factual findings. The ALJ found that basically the meetings were canceled, that there was no further contact with the district following the district sending that letter. All of those things that were determined and affirmed by the district court were already in the ALJ's findings. But nevertheless, the ALJ said there's an impasse. So isn't that a contradiction in terms? I mean, if there's a true impasse, then you have played it out to the end. Well, I think if you read carefully the ALJ's opinion, the word impasse suggested that at that point in time, there was a disagreement and the parent no longer wanted to have a discussion. The parent wanted to place in a preschool program. So that's what they were looking to do. And then the supports that were gained after that from their experts were to support that position. I guess I'd ask you, what's a parent to do? Gets a letter saying you have 15 days to respond. I thank you for bringing that up because I know in the appellant's brief they raised the issue that the parent had no choice. But that's clearly not the case. First of all, they could, as they did, make a unilateral replacement and seek reimbursement. The other possibility is that... But they brought their suit. They brought suit within those 15 days. But then, you get into September and the parents are saying, okay, we've been at this. We've got a school year here. We've got to do something. And I think that's why the regulatory provisions allow for notice 10 days beforehand. That didn't happen here. So, even though the parents decided to initiate a due process petition, they didn't provide the 10 days notice prior to September that they were placing the child in the preschool program. What's your case that's the closest factually to this? Because I don't find Cape Henlopen to be as on point because there, there was no IEP. There was no IEP presented. The parents just said, you know, we're out of here. I think this is different. There was an IEP. There were meetings. There was a revised IEP. There were experts. Everybody was talking but everybody was disagreeing. And at some point the parents said, okay, we've got to do something. So, what's your best case for the proposition that the district court was correct that given the equities, given the equities the ALJ's findings should be overturned based upon the way this developed and the parents unilaterally acting this way. What's your best case? Well, I think that I think Cape Henlopen has the closest scenario but I think the cases that deal with this issue are the cases that talk about the standards to be applied in the cases of reimbursement for unilateral placement because it isn't just the fact of having an IEP. Those cases, you know, the but I mean he didn't have a fate for two months. So, they put him in a place where he wasn't getting what they were saying he should get and they unilaterally put him there. So, I agree and also the ALJ made that finding. So, the ALJ in essence did find that the program that they chose was not proper and appropriate as we've set forth in our paperwork and therefore up until November there was no fate because there was no IEP. He was enrolled as a general ed student and he had no services. So, the ALJ had that finding in his petition. Now, the fact that and I would disagree and I would say the district court is entirely correct that the meeting between the project child and the parents did not create an IEP. It's not an IEP. It's some document that they used thereafter but there was no placement in an appropriate program where the child received supports and services under an IEP and the judge ALJ recognized that as of September when he was enrolled in the program there was no program there was no supports there was no IEP so and that was inappropriate. So, if you go back to the cases that outline the limitations on unilateral placement then clearly even if you assume and I would say again you'd have to send that back if that's your issue as to whether the IEP offered was appropriate. Pardon me? Unilateral placement always occur where parents disagree with the with the school board's  Well, I would hope so. If you disagree what are you to do except unilateral placement? I'm not suggesting that you can't make a unilateral placement and seek reimbursement. Our Supreme Court has clearly recognized that as an option. What happens is And if you do unilateral placement you then make a claim for reimbursement. Isn't that the usual scenario? It is the usual scenario but the analysis to go into that is not only what did the district offer at the time that you were making that decision but was what you chose appropriate and did you follow the notice provisions? Did you act with equity? And that's why we go back to what the administrative law judge decided and the administrative law judge decided that what you did was appropriate that is put your child in the child project program as opposed to the upper freehold program. Did you say he made the decision that was appropriate? He did not. He made the decision that was not appropriate at least until November. The administrative law judge made a decision that the individual educational plan would not as proposed by upper freehold would not provide an appropriate education. That's one finding, yes. And then he also found that the decision to place the child at project find in the beginning was not appropriate either because there were no services. Well, so why was that clearly erroneous? Why was the administrative law judge's decision clearly erroneous? In terms of the finding about the district program? I don't disagree with the part about the project child program without any services as a general ed student being inappropriate. I agree with that. If the finding is the IEP does not provide a FAPE, I hate to use the acronyms but that's what it is. And that's a finding, a fact, why was it clearly erroneous? Because it's clearly erroneous because of all the wealth of information that the ALJ accepted as credible evidence on the record that suggested that it was appropriate from people who went into the program who looked at the program who were educators and not, while Dr. Rahm-Cartel has great credentials and is a developmental pediatrician, she did not review the IEP, she did not go in and observe any school program. She was basing her, if you read the ALJ's recounting of her testimony, she was basically reiterating what she has an understanding of what kindergarten's about versus what preschool's about. So I think a review of the whole record and without overturning any findings or any credibility determinations, I think that it would be determined and had the district court gotten to this issue would be determined that the district did in fact offer FAPE. Can you just comment on the idea of the district court came to the conclusion that the administrative judge's decision was incorrect? Because after the Breslin report was provided in the district contacted them to try to engage in further discussion they no longer wanted to participate and had no further contact other than the context of their overall litigation. This is just shortly after they received the letter from the school board advising them that they had 15 days in which to respond. Correct. What if the parents in response to the June 29 letter in closing the IEP had sent a letter in response that said simply thank you for your letter of June 29 we've reviewed the IEP it should be no surprise to you based on our discussion on June 15 that the IEP is unacceptable to us because it requires our child to be placed in kindergarten and we absolutely based on the advice of Dr. Baum Gartell refused to place our child in kindergarten. That would have been the end of the line wouldn't it? Yes but that wasn't what happened. I understand that but so they had to say that I mean didn't you kind of know that anyway? No I don't believe so because the response to that letter because it seemed like the debate pretty consistently was a debate between preschool and kindergarten rather than a focus on all of the ancillary support services that might come with either program. Yes they were aware that that was the dispute in fact there didn't seem to be much of a dispute in terms of the actual supports and services but the fact is the response to that letter was not okay you've given us your IEP we're taking you to court the response is we don't accept this as a report your report we'd like you to look at Dr. Breslin's report and get back to us. So that is what they told you on July 3? Yes. And then what did you do? Then we sent a letter asking them to contact us to discuss the report. And you never heard? Correct. Is your best case that the ALJ got it wrong or is it the district court's decision that the parents withdrew too early from the process? Well I think both arguments are strong arguments in this particular case since the judge the district court as your your honors recognize didn't address the whether the actual district IEP gave FAPE or not that issue wasn't decided. But I do think that there's support in the record and a substantial basis for the district court's finding that the notice and the other equitable considerations that were taken into account also barred unilateral reimbursement for unilateral placement regardless of whether there was FAPE or not. Thank you your honors. If I may respond to just to clarify the July timeline so the district sent their letter with the IEP on June 29th on July on July 2nd appellant's expert finished the report the next day July 3rd with a cover letter MW hand delivers the expert's report with a cover letter saying please email me call me to discuss then almost two weeks passed and the 15 day timeline under New Jersey law 6A dash 14 2.10 the 15 day deadline is ticking on the 13th day of that timeline the school has still not replied their letter has not been postmarked yet. So parents file for due process extension of time sorry your honor you asked for an extension of time because the clock was ticking? No at that point the statute says that within 15 days if you don't want this you have to file for due process you're not allowed to get an extension of time? It doesn't say that anywhere in the statute no your honor you've never sought an extension of time. Otherwise the school would then the state put provisions of the IDA would kick in but if you don't object within 15 days you don't get state put. So as an abundance of caution they filed a lawsuit? They filed a notice for due process and they also they took the conciliatory approach of consenting to mediation in their cover letter they said you know please contact us to schedule the mediation mediation didn't happen. There was a resolution session that happened in August the police referred to a letter responding that letter and the record clearly reflects is postmarked either July 13th or 16th. So I would think that appellants couldn't have gotten it before the 16th but even if they got it the 13th that's after the 12th. Even with those filings by the parent could they still work towards an IEP? They could have and nothing precluded that the parents would have proposed mediation they didn't do mediation but they ultimately did do a resolution meeting. At that resolution meeting the parents came with another letter from Dr. Baumgartel suggesting Project Child for the following year. They provided another letter at August. As required by the law the resolution meeting has to involve the parents and the IEP team. So they were all there. And the district court said there was a complete disengagement by the parent. And the district  finding is completely unsupported by the record. In the district court's opinion there's no citation to the record. The filing of a lawsuit  represent a complete disengagement? Not when the school took the on June 29th they could when they sent their proposed IEP with the cover letter they could have just said we're sending you a proposed IEP. This is just for purposes of furthering our discussion. We're not sending you this to start the 15-day clock ticking so that state court will go away if you don't. They could have done that but that's not what they did. They forced M.W.'s hand. If they wanted other meetings why would you send that letter on June 29th to start the clock ticking. That doesn't show interest by the state court. I'm not asking you to make a decision in 15 days. Let's have more meetings. The clock does not start running. The record shows that as early as February my client had sent kindergarten pre-registration slips in February. In that cover letter it said look we've discussed with the child study team that kindergarten might not be the right choice but we've been advised to get the ball rolling. Already in February the parents were having this dialogue with the school and continued through the spring and June they had this meeting. It wasn't a last meeting but it was a very important meeting. I will start with the second prong. The written notice was given at the joint appendix 2118. That is the July 12 notice request for due process. That's the page for relief. If we read the request for relief it sets out the items to inform the school that there is a disagreement and that as a result of that disagreement the school may end up paying for them to be placed somewhere else. They reject the placement proposed and they intend to enroll their child in a private  at public expense. That is July 12. That is almost two months before. For the first prong at the last IEP meeting it is in the briefs. We have Upper Freehold's own witnesses, their learning disabilities teacher as well as their own school psychologist saying the parents voiced their concern that the child wasn't ready for kindergarten and that he should be placed at Project Child. The first prong asks for it to be done at the meeting. In the second prong the written notice was given on July 5th. The intent had been put out as far back as July 5th. We think he belongs in Project Child Preschool. Thank you. Thank you very much. The case is well argued. We'll take it under advisement.